**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANIELLE KURMAN, | ) | CASE NO. 1:20-cv-1837 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Comm'r of Soc. Sec.,* | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Danielle Kurman (Plaintiff), challenges the final decision of Defendant Kilolo

Kijakazi, Acting Commissioner of Social Security (Commissioner),[1] denying her application for

Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§

416(i), 423 *et seq.* (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is

before the undersigned United States Magistrate Judge pursuant to an automatic referral under

Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the

Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

### I. Procedural History

On April 13, 2018, Plaintiff filed her application for DIB, alleging a disability onset date of

January 8, 2018. (R. 12, Transcript (Tr.) 196). The application was denied initially and upon

reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a
party." Fed.R.Civ.P. 25(d).

(Tr. 122-137). Plaintiff participated in the hearing October 9, 2019, was represented by counsel, and testified. (Tr. 48-86). A vocational expert (VE) also participated and testified. *Id*. The ALJ found Plaintiff not disabled on November 7, 2019. (Tr. 42). On June 29, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6).

Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 12 & 14). Plaintiff asserts the following assignment of error: the ALJ's finding that Plaintiff can perform light work is not supported by substantial evidence where the ALJ failed to properly analyze Plaintiff's complaints properly pursuant to SSR 16-3p and SSR 03-2. (R. 12).

## II. Evidence

### A. Relevant Medical Evidence[2]

#### 1. Treatment Records

On April 20, 2018, Plaintiff saw Prasanth Gogineni, M.D., to establish care, and identified symptoms of diarrhea, nausea, bloating, and anxiety. (Tr. 602). She had been weaned off of Cymbalta two months earlier. *Id*. On examination, Plaintiff had normal range of motion (ROM) in her arms and legs, no edema, normal ROM in the neck, and a normal mood and affect. (Tr. 604).

On June 5, 2018, Plaintiff saw Daniel Nader Daria, M.D., for a social security disability evaluation. (Tr. 642-645). Plaintiff complained of lower back pain and joint pain dating back to a

---

[2]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs, that are directly to Plaintiff's conditions as of the alleged onset date, and also deemed relevant by the court to the assignments of error raised.

2014 car accident, and reported that she had six surgeries between 2014 and 2017 to the right side of her back. (Tr. 642). The record notes that Plaintiff was able to do her own grocery shopping, cooking, house cleaning, laundry, and gardening. *Id*. Her medications included Methadone HCI, Cymbalta, and Xanax. *Id*. Plaintiff reported joint stiffness and swelling, muscle aches, gait abnormality, difficulty balancing, dizziness, pain in the shoulders and joints, weakness, and anxiety. (Tr. 644). She denied carpal tunnel, leg cramps, decreased sensation in the extremities, painful extremities, and difficulty walking. *Id*. On examination, Plaintiff had full ROM in her neck, back, arms, and legs; no abnormal musculoskeletal findings; no evidence of trigger points; full grip strength in both hands; normal motor strength in her arms and legs; intact sensation; normal gait; and no muscle weakness or loss of motor function in her arms and legs. (Tr. 644-645). The assessment was complex regional pain syndrome type I of both lower extremities. (Tr. 645).

On July 25, 2018, psychologist Robert Bash, Ph.D., performed a mental status evaluation. (Tr. 647). He noted that an informal survey of activities suggested Plaintiff is able to complete activities of daily living independently. (Tr. 648). Recent memory was below average, while remote memory was within normal limits. *Id*. Abstract thinking was within normal limits, insight was good, and social judgment was within normal limits. *Id*. Diagnostic impressions identified somatic symptom disorder, with predominant persistent severe pain, and adjustment disorder with mixed anxiety and depressed mood. *Id*. Dr. Bash concluded that Plaintiff's painful right upper extremity precipitated her current depression and anxiety. *Id*.

On August 27, 2018, Plaintiff's chief complaint was constant left arm and hand pain without numbness or paraesthesias. (Tr. 821). She described her aching and burning as an eight on a ten-point scale. (Tr. 822). It was noted that Plaintiff had not responded to medications,

physical therapy, and surgery. *Id*.

On September 14, 2018, Plaintiff's physical exam revealed 5/5 strength in all extremities, ROM was normal in extremities and back save for her left arm limited to 90 degrees, normal gait, and negative Romberg test. (Tr. 665). On mental status, she was anxious with slightly constricted affect, was guarding her left arm, had an "OK (incongruent)" mood, and fair insight/judgment. *Id*.

On October 8, 2018, Plaintiff had follow-up examination for re-evaluation of her left upper extremity pain. (Tr. 655). She saw Robert Bolash, M.D., for the first time after requesting a release of care from Dr. Basi. *Id*. Dr. Bolash noted that Plaintiff had a Boston Scientific spinal cord stimulator (SCS) placed in early 2015, followed by a Nevro SCS in 2017 with the same Boston Scientific leads being kept. *Id*. On physical examination, Plaintiff displayed normal ROM in her back without pain, "her "[p]eripheral joint ROM is full and pain free without obvious instability or laxity in all four extremities," she had 5/5 strength bilaterally in the upper extremities, except for reduced strength with shoulder abduction on the left. (Tr. 657). She had normal hand grip and finger extension, normal gait, and normal sensation. *Id*.

On November 1, 2018, Plaintiff saw psychologist Amir Jassani, Ph.D., for an initial evaluation. (Tr. 959). Plaintiff reported "anxiety, depression, possibly PTSD." (Tr. 960). She was on Paxil, Atarax, and Trazadone prescribed by a nurse practitioner. (Tr. 961). Plaintiff reported waking up at 8 a.m. to let her dog out and returning to bed until 11 a.m. *Id*. She reported walking her dog twice a day, having breakfast with her mother, doing the "laundry and other household tasks," and going out to dinner with her friend every other week. (Tr. 961-962).

On November 8, 2018, Plaintiff received the second of two trial pain injections of Prialt, and reported "80% relief following the first procedure for 9 hours." (Tr. 970). She reported

4

constant pain in her left upper extremity, which she rated as a 5 of 10 that day. *Id*. Her post-procedure pain was a 1 of 10. (Tr. 971).

On December 10, 2018, Plaintiff reported persistent pain, which she rated as a 5 of 10 that day. (Tr. 991). Plaintiff reported receiving about 90% pain relief for the majority of the day following the pain injection. *Id.* She wanted to continue with the placement of an intrathecal pump (ITP) implant, and also reported wanting her spinal cord stimulator (implanted in a surgery prior to her alleged disability onset) removed because it was not providing relief. *Id*. On physical examination, Plaintiff showed normal ROM in the back without pain, full and pain-free peripheral joint range of motion without instability or laxity in all four extremities, normal and symmetric strength in all four extremities, no atrophy, a normal gait, and decreased sensation over lateral aspect of the left hand. (Tr. 993). Dr. Bolash noted that Plaintiff, "had made great strides with respect to her pain improvement," and continued to assess chronic pain syndrome and CRPS of the left arm. (Tr. 994).

On February 13, 2019, Plaintiff was seen by Khalil Al-Amin, M.D., for a follow-up after surgical placement of an ITP on February 1, 2019. (Tr. 1053). Plaintiff reported greater than 50% improvement, but continued to report burning pain in her left hand that improved moderately post implant. *Id*. She planned to see neurosurgery for removal of surgical leads. *Id*. On examination, Plaintiff's left hand was tender to palpation, she had full ROM of the left shoulder, normal motor strength, and grossly normal gait. (Tr. 1054).

On March 12, 2019, Plaintiff reported walking regularly, gaining weight on Paxil, feeling down, and isolating again. (Tr. 1020). She had become the guardian of her 13-year-old niece. *Id*. On mental status examination, she was slightly anxious, her affect slightly constricted, mood was "OK," intact cognition, and fair insight/judgment. *Id*. On physical examination, Plaintiff had 4/5

strength throughout, reduced ROM throughout, normal gait, and +1 reflexes throughout. *Id.*
Xavier Jimenez, M.D., continued to assess chronic pain syndrome and CRPS of the left upper
extremity. *Id.* The plan was to reduce Paxil, start Wellbutrin, continue psychotherapy and
physical therapy, and to continue Prialt infusions. (Tr. 1021).

On May 13, 2019, on physical examination, Plaintiff had grossly intact motor strength in
the upper extremities but had tenderness in her left hand, swelling in her right ring finger, and
limited range of motion in her right wrist and right fourth finger. (Tr. 1045). Dr. Al-Amin stated
that Plaintiff's "[l]eft arm pain from CRPS [was] well controlled on current Ziconotide dose."
(Tr. 1046). He did express some concern about developing CRPS in the right hand. *Id.*

On the same date, Plaintiff reported to Dr. Jassani that she takes her dogs for walks, thought
about taking yoga classes, and enjoyed going to the salon to get facials and manicures. (Tr.
1078).

On June 13, 2019, Plaintiff told Dr. Jimenez that she fractured her right ring finger and was
anxious that she would develop CRPS in her right hand too. (Tr. 1076).

### 2.  Medical Opinions Concerning Plaintiff's Functional Limitations

On August 7, 2018, state agency psychologist Kevin Ragsdale, Ph.D., opined that
Plaintiff's mental impairments were non-severe and imposed no more than mild limitations in
any functional realm. (Tr. 92-94). Dr. Ragsdale explained that Plaintiff had no documented
history of inpatient psychiatric admissions or outpatient mental health care. (Tr. 93). He noted
that Plaintiff's primary care physician started her on Zoloft when she was a new patient despite
her mental status examination being within normal limits. *Id.*

On December 7, 2018, state agency psychologist Kristen Hawkins, Psy.D., completed a
mental residual functional capacity (RFC) assessment. (Tr. 113-116). She found that Plaintiff

was not significantly limited in her ability to understand and remember detailed instructions. (Tr. 114). In addition, she had moderate limitations in her ability to: interact with others, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, and respond appropriately to changes in the work setting. (Tr. 114-115). Dr. Hawkins explained that Plaintiff was capable of the following: "completing short cycle work tasks in an environment without strict production demands;" "occasional interactions with the general public … [and] can frequently interact with coworkers and supervisors;" and "can work within a set routine where major changes are explained in advance and gradually implemented…." (Tr. 114-115).

On December 18, 2018, state agency physician William Bolz, M.D., completed a physical RFC assessment finding that Plaintiff was limited to a reduced range of light work. (Tr. 111-113). Dr. Bolz found Plaintiff was restricted to lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently; standing/walking for six hours and sitting for six hours each in an eight-hour workday; and could occasionally climb ladders/ropes/scaffolds, stoop, and crawl. (Tr. 111). Dr. Bolz also found Plaintiff had limited ability to reach overhead with her left arm, resulting in a limitation of only occasional overhead reaching. (Tr. 112).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§

404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6ᵗʰ Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2023.

2. The claimant has not engaged in substantial gainful activity since January 8, 2018, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.      The claimant has the following severe impairments: complex regional pain syndrome of the left shoulder/arm; anxiety; degenerative disc disease; and depressive disorder. (20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she can occasionally reach overhead to the left; she can frequently kneel, crouch and climb ramps and stairs; she can never limb [sic] ladders, ropes, or scaffolds. The claimant can occasionally stoop and crawl. She is limited to working in an environment with no strict production rate pace requirements with frequent interaction with supervisors and coworkers and only occasional interactions with the public. The claimant can tolerate routine workplace changes where changes outside of the routine are explained in advance and implemented gradually.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on ***, 1969 and was 48 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 C.F.R. § 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social

Security Act, from January 8, 2018, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 29-30, 33, 40-42).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignment of Error

Plaintiff contends the ALJ's decision—that Plaintiff had an residual functional capacity (RFC) for a limited range of light work—is not supported by substantial evidence, because, when

determining the credibility of Plaintiff's alleged symptoms, the ALJ allegedly failed to properly

consider the impact of Social Security Ruling (SSR) 03-2p, 2003 WL 22399117 (S.S.A. Oct. 20,

2003) in conjunction with SSR 16-3p, 2017 WL 5180304 at *10 (Oct. 25, 2017).[3] (R. 12,

PageID# 1215-1222). Here, the ALJ accepted that Plaintiff suffered from Complex Regional

Pain Syndrome (CRPS) and designated it as one of Plaintiff's severe impairments. (Tr. 30).

First, a claimant's RFC is an indication of an individual's work-related abilities *despite*

their limitations. *See* 20 C.F.R. §§ 404.1545(a). The ALJ bears the responsibility for assessing a

claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c); *see also Poe*

*v. Comm'r of Soc. Sec.*, 342 F. App's 149, 157 (6th Cir. 2009) ("The responsibility for

determining a claimant's residual functional capacity rests with the ALJ, not a physician.").

Here, the ALJ determined Plaintiff could perform light work, except that she can only

occasionally reach overhead to the left; can only frequently kneel, crouch and climb ramps and

stairs; can never climb ladders, ropes, or scaffolds; can only occasionally stoop and crawl; and

included a number of additional non-exertional, psychologically-based limitations.[4] (Tr. 33).

---

[3] "The Sixth Circuit characterized SSR 16-3p [which superseded SSR 96-7p] … as merely eliminating 'the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Butler v. Comm'r of Soc. Sec.*, No. 5:16cv2998, 2018 WL 1377856, at *12 (N.D. Ohio, Mar. 19, 2018) (Knepp, M.J.) (*quoting Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 119 n.1 (6th Cir. 2016)). Like several other courts, this court finds little substantive change between the two social security rulings, and the changes largely reflect a preference for a different terminology. *See, e.g., Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."). While the court applies the current SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of that term is most logical.

[4] Plaintiff's brief does not clearly set forth which of her alleged symptoms, if deemed wholly credible and consistent with the evidence, would have conflicted with the ultimate RFC determination. Nevertheless, the argument portion of Plaintiff's brief focuses primarily on her pain allegations, and makes no meaningful argument that the psychologically-based limitations included in the RFC were inadequate to account for her mental health-based limitations.

To the extent Plaintiff is asking the court to reweigh the evidence *de novo* and arrive at its own RFC determination based on a reexamination of Plaintiff's credibility, such an invitation exceeds the scope of this court's review. The court can only review whether the ALJ's decision was supported by substantial evidence. The Sixth Circuit has explained,

> [The plaintiff] additionally argues that the ALJ's RFC determination was not supported by substantial evidence. "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). Substantial evidence in this context "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). This standard means that "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). In reviewing the ALJ's decision, we 'may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility.' *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Finally, [the plaintiff] bears the burden of demonstrating a RFC more restrictive than that determined by the ALJ. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

*O'Brien v. Comm'r of Soc. Sec.*, 819 Fed. App'x 409, 416 (6th Cir. 2020). "It is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence." *Collins v. Comm'r of Soc. Sec.*, 357 Fed. App'x 663, 670 (6th Cir. 2009) (citations omitted).

The ALJ's determination that Plaintiff could perform a limited range of light exertional work is supported by the opinions of State Agency physician Dr. Bolz,[5] which the ALJ deemed

---

[5] The regulations now refer to the opinions of State Agency physicians as a "prior administrative medical finding," which is defined as "a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review … in your current claim based on their review of the evidence in your case record, such as: (i) [t]he existence and severity of your impairment(s); (ii) [t]he existence and severity of your symptoms; (iii) [s]tatements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; … (v) [i]f you are an adult, your residual functional capacity …." 20 C.F.R. §§ 404.1513(a)(5) & 416.913(a)(5).

persuasive because it was "more consistent with the evidence of record." (Tr. 39, 111-113). Dr. Bolz found Plaintiff was restricted to lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently; standing/walking for six hours and sitting for six hours each in an eight-hour workday; and could occasionally climb ladders/ropes/scaffolds, stoop, and crawl. (Tr. 111). Dr. Bolz also found Plaintiff had limited ability to reach overhead with her left arm, resulting in a limitation of only occasional overhead reaching. (Tr. 112). Thus, the physical portions of the RFC determination are supported by Dr. Bolz's opinion. The ALJ found this opinion to be persuasive, though the ALJ added an additional restriction of never climbing ladders, ropes, or scaffolds "as a result of her limited overhead reaching with the left arm." (Tr. 39).

There is ample case law concluding that State Agency medical consultative opinions may constitute substantial evidence supporting an ALJ's decision. *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (state agency expert medical opinions

"constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work."). Thus, an RFC determination that is based upon the medical opinions of State Agency consultants is generally supported by substantial evidence.

Despite captioning her sole assignment as a challenge to the supportability of the RFC, the bulk of Plaintiff's argument actually revolves around the contention that the ALJ's credibility determination of Plaintiff's alleged symptoms was deficient. (R. 12, PageID# 1215-1222). However, "credibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)*.* An ALJ is not required to accept a claimant's subjective complaints. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016). The *Villarreal* court noted "tolerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded." *Villarreal*, 818 F.2d at 463 (citations omitted). Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) ("the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation").

"In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not)

14

supported or consistent.'" SSR 16-3p, 2017 WL 5180304 at *10. Rather, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id*. at *10. A reviewing court should not disturb an ALJ's credibility determination "absent [a] compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and "in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

According to SSR 16-3p, evaluating an individual's alleged symptoms entails a two-step process that involves first deciding whether a claimant has an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." 2017 WL 5180304 at *2-3. The ALJ's decision found the first step was satisfied, because "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 34).

After step one is satisfied, an ALJ should consider the intensity, persistence, and limiting effects of an individual's symptoms. The ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*.

Specifically, the ALJ's decision found as follows:

> The claimant testified that she experiences consistent daily pain in her hand and arm. She said that after her initial injuries occurred, she tried to return to work and was working 13-hour days. She said that she eventually stopped working when

she was so emotionally and physically exhausted that she was not able to
continue. The claimant said that her pain has not been significantly reduced by
medications, physical therapy, or a spinal stimulator. She testified that she has
participated in the pain management program at the Cleveland Clinic, but still
experiences significant symptoms of pain and fatigue. The claimant said that she
spends most of her days watching television, and on bad days, does not get out of
bed. She testified that she does no household chores, adding that when she
attempts to perform physical activities, she "pays for it the next day." The
claimant said that she has become depressed as a result of her physical
pain, and has withdrawn socially. She said that she has difficulty following TV
shows and concentrating on reading material. (Hearing testimony).

***

The claimant's statements about the intensity, persistence, and limiting effects of
her symptoms are not fully consistent with the evidence of record. First, the
record establishes that while the claimant experiences physical pain as a result of
complex regional pain syndrome, with some contribution to pain from mild
degenerative disc disease, the record shows that she reports receiving significant
pain relief from the infusion treatment, and has fully preserved strength and only
slight limitations in range of motion. As for her mental impairments, mental status
examinations describe her as presenting with sad affect, but also indicate that she
has no difficulty understanding or comprehending conversations, no overt
inattention or distractibility, pleasant and cooperative demeanor, and the ability to
care not only for herself, but to provide adult supervision to her niece.

(Tr. 34, 38-39).

Although the ALJ distributed the credibility discussion throughout the underlying decision

rather than gathering the analysis in a single section, the court considers the ALJ's decision as a

whole. At the second step, when considering the intensity, persistence, and limiting effects of an

individual's symptoms, an ALJ should consider the following seven factors: (1) daily activities;

(2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that

precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of

any medication an individual takes or has taken to alleviate pain or other symptoms; (5)

treatment, other than medication, an individual receives or has received for relief of pain or other

symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain

16

or other symptoms; and, (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304 at *4-8 (same factors as in SSR 96-7p).

With respect to the location, duration, frequency, and intensity of pain or other symptoms, the ALJ noted several of Plaintiff's medical records reflected that she had, for example, "full and pain-free peripheral joint range of motion without obvious instability or laxity." (Tr. 35, 36; citing Tr. 675, 993). With respect to treatment, the ALJ specifically pointed to Dr. Al-Amin's observation that Plaintiff's left arm pain from CRPS was "well-controlled on current Ziconotide dose."[6] (Tr. 36, citing Tr. 1046; Exh. 18F/9). The ALJ also noted that Plaintiff self-reported muscle atrophy on at least two occasions. (Tr. 33, 35, citing Tr. 663 ; Exhs. 2E/2 & 14F/13-14). The ALJ's decision also identifies multiple instances where medical providers found no issues with strength, at times including grip strength in both hands, which can reasonably be construed as starkly refuting Plaintiff's allegations of "extreme atrophy."[7] (Tr. Tr. 34, 35, 36). With respect to daily activities, the ALJ's decision also identifies inconsistencies in Plaintiff's statements. The ALJ noted that Plaintiff stated she performed no household chores (Tr. 34), but later referenced Plaintiff's own statement to a medical provider that she performed laundry as well as other household chores. (Tr. 36, citing Tr. 961; Exh. 15F/10).

The ALJ engaged in a sufficient credibility analysis, and was not required to analyze all

---

[6]  While Plaintiff complains that neither she "nor her physicians have ever described her as pain free," the court does not construe the decision as stating otherwise, as the ALJ's decision does not characterize Plaintiff as pain-free. While acknowledging Plaintiff experiences pain, the ALJ pointed to portions of the record that detract from the level or intensity of the pain alleged. (R. 12, PageID# 1218).

[7] Plaintiff claimed "extreme atrophy" in her disability report prevented her from working. (Tr. 225; Exh. 2E/2).

seven factors, but only those factors germane to the alleged symptoms. *See, e.g., Cross v. Comm'r of Soc. Sec.*, 373 F. Supp.2d 724, 733 (N.D. Ohio 2005) (Baughman, M.J.) ("The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence"); *see also Wolfe v. Colvin*, No. 4:15-CV-01819, 2016 WL 2736179, at *10 (N.D. Ohio May 11, 2016) (Vecchiarelli, M.J.); *Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *9 (N.D. Ohio Apr. 4, 2012) (White, M.J.); *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005) (finding that neither SSR 96-7p nor the regulations "require the ALJ to analyze and elaborate on each of the seven factors when making a credibility determination"). SSR 16-3p itself states that where "there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor," but rather will only "discuss the factors pertinent to the evidence of record." SSR 16-3p, 2017 WL 5180304 at *8.

To the extent Plaintiff asserts that her subjective complaints of pain are documented within the medical records, that does not render them *per se* credible, nor are they transformed into "medical opinions" simply because the patient's statements have been recorded in treatment notes. *See, e.g., Francis v. Comm'r of Soc. Sec.*, 414 Fed. App'x 802, 804 (6th Cir. 2011) (concluding the physician's statement "is not a 'medical opinion' at all—it merely regurgitates [the patient's] self-described symptoms"); *accord Paddock v. Comm'r of Soc. Sec.*, No. 1:11-cv-7, 2012 U.S. Dist. LEXIS 135860, 2012 WL 4356711 (W.D. Mich. Sept. 24, 2012); *see also Boughner v. Comm'r of Soc. Sec.*, No. 4:16-CV-1858, 2017 U.S. Dist. LEXIS 89060, 2017 WL 2539839, at *8 (N.D. Ohio May 22, 2017), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 89061, 2017 WL 2501073 (N.D. Ohio June 9, 2017) (finding that medical records containing observations recorded by a claimant's physician were likely statements made by

plaintiff about his condition and not medical opinions as defined by the regulations); *Coleman v. Comm'r of Soc. Sec. Admin.*, No. 1:16-CV-0179, 2016 U.S. Dist. LEXIS 184079, 2016 WL 8257677, at *14 (N.D. Ohio Nov. 29, 2016), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 21835, 2017 WL 633423 (N.D. Ohio Feb. 15, 2017) (finding that "office notes reflect plaintiff's own subjective statements regarding her condition" and, therefore, do not constitute "objective medical evidence"); *Rogers v. Astrue*, No. 11-cv-82, 2012 U.S. Dist. LEXIS 24712, 2012 WL 639473, at *4 (E.D. Ky. Feb. 27, 2012) ("Simply recording Plaintiff's subjective complaints is not objective medical data therefore Dr. Lyons' clinical findings were insufficient to support a deferential review by the ALJ.")

Finally, Plaintiff argues the ALJ did not fully consider the factors set forth in SSR 03-2p. (R. 12, PageID# 1221). The purpose of SSR 03-2p is to explain the policies of the SSA for developing and evaluating Title II and Title XVI disability claims involving Reflex Sympathetic Dystrophy Syndrome (RSDS), which is also frequently known as Complex Regional Pain Syndrome, Type I (CRPS)—"[t]hese terms are synonymous and are used to describe a unique clinical syndrome that may develop following trauma." SSR 03-2p, 2003 WL 22399117 at *1. RSDS/CRPS is most often, though not always, triggered by trauma to a single extremity. *Id*.

> RSDS/CRPS patients typically report persistent, burning, aching or searing pain that is initially localized to the site of the injury. The involved area usually has increased sensitivity to touch. The degree of reported pain is often out of proportion to the severity of the precipitating injury. Without appropriate treatment, the pain and associated atrophic skin and bone changes may spread to involve an entire limb. Cases have been reported to progress and spread to other limbs, or to remote parts of the body.
>
> ***
>
> For purposes of Social Security disability evaluation, RSDS/CRPS can be established in the presence of persistent complaints of pain that are typically out of proportion to the severity of any documented precipitant and one or more of the

following clinically documented signs in the affected region at any time following the documented precipitant:

• Swelling;

• Autonomic instability—seen as changes in skin color or texture, changes in sweating (decreased or excessive sweating), changes in skin temperature, and abnormal pilomotor erection (gooseflesh);

• Abnormal hair or nail growth (growth can be either too slow or too fast);

• Osteoporosis; or

• Involuntary movements of the affected region of the initial injury.

When longitudinal treatment records document persistent limiting pain in an area where one or more of these abnormal signs has been documented at some point in time since the date of the precipitating injury, disability adjudicators can reliably determine that RSDS/CRPS is present and constitutes a medically determinable impairment. It may be noted in the treatment records that these signs are not present continuously, or the signs may be present at one examination and not appear at another. Transient findings are characteristic of RSDS/CRPS, and do not affect a finding that a medically determinable impairment is present.

SSR 03-2p, 2003 WL 22399117 at **2-4.

Nevertheless, SSR 03-2p does not appear to require any specific mode of analysis. To the contrary it states that "[c]laims in which the individual alleges **RSDS/CRPS are adjudicated using the sequential evaluation process, just as for any other impairment**. Because finding that RSDS/CRPS is a medically determinable impairment requires the presence of chronic pain and one or more clinically documented signs in the affected region, the adjudicator can reliably find that pain is an expected symptom in this disorder." *Id*. at*6 ("whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."). Nothing in SSR 03-2p compels an ALJ to find a claimant's alleged

20

symptoms *per se* credible. Rather, as contemplated by the ruling, the ALJ, as discussed above, proceeded to discuss whether Plaintiff's subjective statements were supported (*i.e.* credible) pursuant to SSR 16-3p.

Thus, the court recommends finding Plaintiff's sole assignment of error is without merit.

## VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*
United States Magistrate Judge

Date: January 13, 2022

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais,* 928 F. 3d 520, 530-31 (6th Cir. 2019).**